**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SAPIR TURKENITZ GADASI**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**MARCO A. RUBIO**, *et al.*,<br><br>Defendants. | Case No. 26-cv-2549 (CRC) |

## MEMORANDUM OPINION

Plaintiffs Sapir Gadasi and her husband Inon Gadasi won the diversity-visa lottery for fiscal year 2026. Mrs. Gadasi got her visa. But before the Department of State finished processing Mr. Gadasi's application, it paused the issuance of all diversity visas. Once the fiscal year ends on September 30, so does Mr. Gadasi's chance to obtain his visa. Plaintiffs thus ask this Court to order the Department to exempt Mr. Gadasi from the categorical pause policy and process his application before time runs out.

But Plaintiffs are members of a subclass that was recently certified in Medani v. Trump, No. 26-cv-6332-EJD, 2026 WL 2547287 (N.D. Cal. Aug. 28, 2026). That court has already enjoined the pause policy and ordered the State Department to move expeditiously on diversity visas. Plaintiffs believe that Medani does not go far enough as it does not guarantee that Mr. Gadasi's application will be timely processed. Under the first-to-file rule, however, Plaintiffs must raise this concern with the Medani court, not this one. That is especially so because their requested relief would place Mr. Gadasi ahead of thousands of other class members subject to the same fiscal-year deadline, thereby undermining the careful balance struck in the class-wide remedy. The court supervising the class is best positioned to determine whether prioritizing Mr.

Gadasi's application is warranted. The Court will therefore deny Plaintiffs' motion for a preliminary injunction and dismiss the case.

## I. Background

### A. Diversity Visa Program

Congress makes 55,000 immigrant visas available each fiscal year to applicants from countries with historically low rates of immigration to the United States. See 8 U.S.C. §§ 1151(e), 1153(c). Demand for these "diversity" visas "regularly outstrips supply," so the State Department uses a lottery to determine who may apply. Gomez v. Trump, 485 F. Supp. 3d 145, 159 (D.D.C. 2020); see 22 C.F.R. § 42.33. Lottery winners, called "selectees," "are not guaranteed to receive a visa—only the opportunity to apply for one." Rai v. Biden, 567 F. Supp. 3d 180, 186 (D.D.C. 2021). That opportunity extends to a selectee's spouse and children, who may also apply for a diversity visa as "derivative" beneficiaries. 8 U.S.C. § 1153(d).

Selectees and their derivatives must "submit a full, written application for an immigrant visa and must personally appear for an interview before a consular officer." Goodluck v. Biden, 104 F.4th 920, 922 (D.C. Cir. 2024). They must also "satisfy all admissibility requirements." Id.; see 8 U.S.C. § 1182(a). If an applicant complies with these steps, "the State Department 'shall' issue" them a diversity visa, so long as the annual cap has not yet been exceeded. Almaqrami v. Pompeo, 933 F.3d 774, 777 (D.C. Cir. 2019) (citing 8 U.S.C. § 1153(c), (e)(1); 8 U.S.C. § 1202(h); 22 C.F.R. §§ 40.6, 42.81(a)).

This process occurs against a hard deadline. Diversity-visa selectees "remain eligible to receive [a] visa only through the end of the specific fiscal year for which they were selected." 8 U.S.C. § 1154(a)(1)(I)(ii)(II). The same deadline applies to derivative spouses and children. So "when midnight strikes at the end of the fiscal year, those applicants without visas are out of

luck." Yung-Kai Lu v. Tillerson, 292 F. Supp. 3d 276, 282 (D.D.C. 2018). For FY 2026 principal and derivative applicants, the clock runs out on September 30, 2026.

B. The Diversity-Visa Pause

In December 2025, a diversity-visa recipient killed two students at Brown University and was later suspected of killing an MIT professor. Ivanov v. Trump, No. 26-cv-915 (RLJ), 2026 WL 2494805, at *2 (D.D.C. Aug. 25, 2026). In response, the State Department "pause[d] all visa issuances to diversity immigrant visa applicants" and instructed consular officers to "refuse . . . all" diversity-visa applications. Id. at *3 (citations omitted). The so-called DV-Pause Policy identified no date on which consular officers could resume approving diversity visas. See Joint App. at 26–37.

C. Medani v. Trump

In June 2026, thousands of FY 2026 applicants sued the Department of State in the Northern District of California. Their class-action complaint challenged the DV Pause, among other agency actions, and sought a preliminary injunction. Medani, 2026 WL 2547287, at *3. On August 28, the court certified a Rule 23(b)(2) subclass covering "[a]ll selectees and derivative beneficiaries under the FY-2026 Diversity Visa Program who are subject to the DOS DV Pause." Id. at *9. The court also granted preliminary relief. It vacated the DV-Pause Policy for being arbitrary and capricious and ordered the State Department, "to the extent practicable and in good faith, to take all reasonable steps during the remainder of the . . . fiscal year to reconsider applications refused solely under the [] DV Pause" and to "resume ordinary adjudication of pending applications." Id. at *13. The order also left open "the possibility of supplemental relief pending report[s] on [the Government's] good faith efforts to comply with these directives." Id.; see also Medani v. Trump ("Medani II"), No. 26-cv-6332-EJD, 2026 WL

2667529, at *2 (N.D. Cal. Sept. 10, 2026) (requiring the Department of State to file a status report every other day explaining "recent actions taken to comply with the Court's Order" and quantifying "the number of visas issued and denied since the last status report"). The Department has since instructed consular offices to "immediately" begin reviewing applications that were denied solely because of the DV Pause and resume processing outstanding applications. See Defs.' Notice of Supp. Auth., Ex. A at 2–6.

D. Factual and Procedural Background

Plaintiff Sapir Turkenitz Gadasi is an FY-2026 diversity visa selectee, and Plaintiff Inon Gadasi is her derivative spouse. Am. Compl. ¶ 26. The couple alleges that they appeared for their consular interview at the U.S. Embassy in Jerusalem on November 2025, that Mrs. Gadasi's diversity visa was issued in early-December 2025, and that Mr. Gadasi's application was refused in January 2026—soon after the DV Pause was implemented. Id. ¶¶ 26–30. Because "[n]o consular officer . . . ever made any individualized finding that Mr. Gadasi is inadmissible, ineligible, or otherwise unqualified for a derivative diversity visa," id. ¶ 28, Plaintiffs contend that his visa has "been withheld solely on the basis of the DV Pause," id. ¶ 2. In other words, "[t]he only impediment to the issuance of Mr. Gadasi's derivative visa is the DV Pause." Id. ¶ 30.

As the fiscal year neared its end, Plaintiffs brought this suit against the State Department under the Administrative Procedures Act ("APA") and moved for a preliminary injunction in August 2026. See Pls.' Mot. for Prelim. Inj. at 1–3. Plaintiffs "requested relief is narrow"—they "ask only that the Pause not be applied to" the adjudication of Mr. Gadasi's application and for that adjudication to be completed by September 30, 2026. Id. at 19. The Department opposes,

see Defs.' Opp. at 1, and contends that Plaintiffs must seek relief through the class action in Medani, see Joint Notice & Resp. to Show Cause Order ("Joint Medani Notice") at 10–13.

## II. Legal Standards

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). To secure such an injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20. The "movant's failure to show a likelihood of success on the merits is alone sufficient to defeat their motion for a preliminary injunction." Friends of the Earth U.S. v. Exp.-Imp. Bank of the U.S., No. 25-5387, --- F.4th ----, 2026 WL 2409602, at *3 (D.C. Cir. Aug. 18, 2026).

Under the first-to-file rule, "where two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." UtahAmerican Energy, Inc. v. Dep't of Lab., 685 F.3d 1118, 1124 (D.C. Cir. 2012) (cleaned up). A district court has "discretion to dismiss or stay" a later-filed, duplicative suit. Handy v. Shaw, Bransford, Veilleux & Roth, 325 F.3d 346, 349 (D.C. Cir. 2003). And it may take either action *sua sponte*. See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) (noting that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket"); Clayton v. District of Columbia, 36 F. Supp. 3d 91, 95 n.1 (D.D.C. 2014) ("*Sua sponte* dismissal of an action duplicative of a parallel action already pending in another federal court is allowable as an exercise of 'wise judicial administration.'" (quoting Mendlow v. Libr. of Cong., 194 F.3d 174

(D.C. Cir. 1999) (table)). The first-to-file rule may be ignored only in the rare case where the equities demand giving the second-filed action priority. See UtahAmerican, 685 F.3d at 1124.

## III. Analysis

Plaintiffs cannot succeed on the merits because of the first-to-file rule. Medani was filed a month before this action, and Plaintiffs are members of the DV-Pause subclass Medani certified under Federal Rule of Civil Procedure 23(b)(2). See Defs.' Notice of Supp. Auth. at 2; Pls.' Resp. to Defs.' Notice of Supp. Auth. at 1–2. Rule 23(b)(2) classes are "mandatory," so Plaintiffs cannot "opt out" of that subclass. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 362 (2011). The State Department is likewise a Defendant in Medani. See Furniture Brands Int'l, Inc. v. U.S. Int'l Trade Comm'n, 804 F. Supp. 2d 1, 7 (D.D.C. 2011) (explaining that "whether all parties are present in both cases" is the primary equitable consideration). The APA claims Plaintiffs raise here are identical to the claims being raised on their behalf as mandatory class members in Medani.[1] And Medani, as Plaintiffs observe, already "addressed [and enjoined] the same State Department directive at issue here"—i.e., the DV Pause. Pls.' Notice of Supp. Auth. at 1; see id at 2 ("Like the plaintiffs in *Medani*, Mr. Gadasi challenges the same categorical refusal policy."). Because the cases are duplicative, the Court should dismiss this later action unless "equitable considerations" suggest otherwise. Handy, 325 F.3d at 350; see, e.g., Wash. Metro. Area Transit Auth. v. Ragonese, 617 F.2d 828, 830 (D.C. Cir. 1980) (affirming dismissal

[1] Compare Am. Compl. at 16 (APA arbitrary-and-capricious claim under 5 U.S.C. § 706(2)(A)), with Medani Compl. at 51 (same); compare Am. Compl. at 18–19 (APA claim under 5 U.S.C. § 555 and 5 U.S.C. § 706(1) for unlawfully withheld and unreasonably delayed agency action), with Medani Compl. at 56–62 (same); compare Am. Compl. at 20 (APA claim for failure to use notice-and-comment procedures under 5 U.S.C. § 706(2)(D)), with Medani Compl. at 55–56 (same).

of second-filed duplicative case because "comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously").

Equitable considerations support dismissal. "Rule 23(b)(2) exists so that parties and courts . . . can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." DL v. District of Columbia, 860 F.3d 713, 726 (D.C. Cir. 2017); see also McNeil v. Guthrie, 945 F.2d 1163, 1165 (10th Cir. 1991) ("Individual suits for injunctive and equitable relief . . . cannot be brought where there is an existing class action. To permit them would allow interference with the ongoing class action."). That is why courts in this District have repeatedly refused to let members of visa-related Rule 23(b)(2) classes pursue separate, later-filed APA actions for individualized relief. See, e.g., Faizi v. Garland, No. 24-cv-839 (RC), 2024 WL 5075824, at *3–5 (D.D.C. Dec. 11, 2024); Rahman v. Blinken, No. 23-cv-3235 (JDB), 2024 WL 4332603, at *8–9 (D.D.C. Sept. 27, 2024). Indeed, just last week, Judge Walton denied a preliminary injunction brought by several Medani class members, dismissed their case, and directed them to "seek[] the relief [they] sought" in the Northern District of California. Order at 1, Khimich v. Rubio, No. 26-cv-3046 (RBW), ECF No. 12 (D.D.C. Sept. 9, 2026). The Court sees no reason to deviate from this result. Because the first-to-file rule favors the Medani class action over Plaintiffs' more recent suit, Plaintiffs must seek any further relief as members of the Medani class. See Norris v. Slothouber, 718 F.2d 1116, 1117 (D.C. Cir. 1983) ("Because [individual plaintiff's] allegations substantially overlap those in [the pending class action], his case should be referred to the district judge before whom the [class] action is pending.").

Plaintiffs' arguments to the contrary are unpersuasive. They first contend that their desired remedy is not "coextensive" with the relief granted in Medani. Joint Medani Notice at 2. While Medani ordered the State Department to "take all *reasonable steps*" during the rest of the

fiscal year to reconsider applications refused under the DV Pause and "resume ordinary adjudication of pending applications," 2026 WL 2547287, at *13 (emphasis added), Plaintiffs want "a mandatory order *compelling* Defendants to *complete* the adjudication of Mr. Gadasi's derivative diversity visa application" by the September 30 deadline, Joint Medani Notice at 2 (emphasis added). As Plaintiffs put it, they "seek materially greater and different relief." Id. at 2. But that aggravates rather than cures the comity problem. A district court abuses its discretion when it grants equitable relief that expands or supplants relief already being administered in a class action involving the same parties and issues. See, e.g., Goff v. Menke, 672 F.2d 702, 704–05 (8th Cir. 1982); United States v. Nolder, 749 F.2d 1128, 1131 (5th Cir. 1984). After all, a world in which class members may seek or obtain different relief before different courts is the precise problem that the first-to-file rule was designed to prevent. See Rahman, 2024 WL 4332603, at *8–9. The rationale for allowing the Medani court to proceed without interference is thus "fully applicable here: [Courts] should not expend judicial resources—and potentially produce contradictory decisions—by allowing the same [plaintiffs] multiple bites at the apple." UtahAmerican, 685 F.3d at 1124.

Plaintiffs next argue that the relief awarded in Medani has proven inadequate, pointing especially to the Government's slow initial compliance. See Joint Medani Notice at 6; Pls.' Resp. to Defs.' Notice of Supp. Auth. at 1–2. Even if true, that does not help Plaintiffs. "A federal district court lacks jurisdiction to review decisions of other federal courts." Smalls v. United States, 471 F.3d 186, 192 (D.C. Cir. 2006). If Plaintiffs are unhappy with the Medani court's orders, their recourse is to seek relief from that court or appeal—not ask another court to second-guess its remedy. See Sibley v. Roberts, 224 F. Supp. 3d 29, 38 (D.D.C. 2016), aff'd, 696 F. App'x 526 (D.C. Cir. 2017). Indeed, courts in immigration cases routinely bar class

members from pursuing individualized relief in later-filed actions even when the classwide preliminary injunction in the first-filed action is functionally inoperative. See, e.g., Sanchez v. Bondi, No. 25-cv-2287-CNS, 2025 WL 2550646, at *2–3 (D. Colo. Aug. 20, 2025) (rejecting later-filed individual claim where the classwide preliminary relief was stayed and collecting cases doing the same); Qasemi v. Kurzdorfer, No. 25-cv-668-FPG, 2025 WL 2938607, at *6 (W.D.N.Y. Oct. 16, 2025) (same). That principle applies with even greater force here, as the Medani court remains actively engaged in enforcing its injunction, see, e.g., Medani II, 2026 WL 2667529, at *2, and this Court has every reason to expect that it will continue to insist on meaningful compliance from the State Department.

## IV. Conclusion

"In the case of parallel litigation in two federal district courts, the 'general principle is to avoid duplicative litigation.'" Handy, 325 F.3d at 349 (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). "Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided." Columbia Plaza Corp. v. Sec. Nat'l Bank, 525 F.2d 620, 626 (D.C. Cir. 1975). For those reasons, and the others discussed above, the Court will deny Plaintiffs' [6] Motion for a Preliminary Injunction and dismiss the action without prejudice. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: September 17, 2026